**INTERNATIONAL UNION, UNITED MINE WORKERS OF AMERICA, ITS DISTRICTS 17 AND 28, et al., Petitioners,**

**v.**

**NATIONAL LABOR RELATIONS BOARD, Respondent,**

Dixie Mining Company et al., Intervenors.
**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

**v.**

**BITUMINOUS COAL OPERATORS AS-SOCIATION, Respondent,**

International Union, United Mine Workers of America, Districts 17 and 28, et al., Intervenors.

**DIXIE MINING COMPANY, Petitioner,**

**v.**

**NATIONAL LABOR RELATIONS BOARD, Respondent,**

**W. A. Boyle et al., Intervenors.**

**Nos. 21129, 21226 and 23947.**

United States Court of Appeals, District of Columbia Circuit.

Argued June 7, 1972.

Decided Oct. 2, 1972.

Mr. Julian H. Singman, Washington, D. C., with whom Mr. Orlin L. Livdahl, Jr., Washington, D. C., was on the brief, for petitioner in No. 23947. Mr. Stephen M. Nassau, Washington, D. C., also entered an appearance for petitioner in No. 23947.

Ms. Marion Griffin, Atty., N. L. R. B., with whom Messrs. Arnold Ordman, Gen. Counsel at the time the brief was filed, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Glen M. Bendixsen, Atty., N. L. R. B., were on the brief, for respondent in Nos. 21129 and 23947 and petitioner in No. 21226.

Mr. Willard P. Owens, Washington, D. C., with whom Messrs. Edward L. Carey, Harrison Combs and Charles L. Widman, Washington, D. C., were on the brief, for intervenors in No. 23947.

Ms. Kathleen A. Merry, of the bar of the Supreme Court of Pennsylvania, pro hac vice, by special leave of court, with whom Mr. Edward T. Tait, Washington, D. C., was on the brief, for intervenors United States Steel Corp. and others in Nos. 21129 and 21226. Mr. Eric Stoer, Washington, D. C., also entered an appearance for intervenors United States Steel Corp. and others.

Mr. Edward T. Tait, Washington, D. C., and Ms. Kathleen A. Merry filed a brief on behalf of United States Steel Corp. and others as amicus curiae in No. 23947.

Messrs. Stanley R. Strauss, Washington, D. C., and Frank H. Stewart, Cincinnati, Ohio, entered appearances for intervenor Dan S. Davison in No. 21129.

Messrs. John A. McGuinn and Guy Farmer, Washington, D. C., entered appearances for respondent in No. 21226.

Before BAZELON, Chief Judge, and WRIGHT and TAMM, Circuit Judges.

J. SKELLY WRIGHT, Circuit Judge:

These consolidated appeals in this continuing litigation [1] challenge certain provisions of the National Bituminous Coal Wage Agreement as violative of Section 8(e) of the National Labor Relations Act.[2] For the reasons stated below, we dismiss all appeals for lack of a justiciable case or controversy and want of jurisdiction.

### I. *No. 23,947*

In 1958 the United Mine Workers and the Bituminous Coal Operators Association amended the National Bituminous Coal Wage Agreement by inserting a so-called "Protective Wage Clause" (PWC). The clause provides, in relevant part: " * * * [T]he Operators agree that all bituminous coal mined, produced, or prepared by them, or any of them, or procured or acquired by them or any of them under a subcontract arrangement, shall be or shall have been mined or produced under terms and conditions which are as favorable to the employees as those provided for in this Contract."

Independent coal producers challenged this clause before the Labor Board, and in 1963 the Board held that it was a "union standards clause" in violation of Section 8(e). *See* Raymond O. Lewis, W. A. Boyle and John Owens, 144 NLRB 228 (1963). When review was sought in this court, we pointed out that the Board's decision preceded several of our decisions permitting union standards clauses so long as they were " 'germane to the economic integrity of the principal work unit.' " *See, e. g.,* Orange Belt District Council of Painters No. 48 v. NLRB, 117 U.S.App.D.C. 233, 237, 328 F.2d 534, 538 (1964); Truck Drivers Union Local No. 413 v. NLRB, 118 U.S.App.D.C. 149, 334 F.2d 539 (1964). *Cf.* National Woodwork Manufacturers

---

1. *See* Int. Union, United Mine Workers v. NLRB, 130 U.S.App.D.C. 244, 399 F.2d 977 (1968).

2. Section 8(e), 29 U.S.C. § 158(e) (1970), provides, in relevant part:

   "It shall be an unfair labor practice for any labor organization and any employer to enter into any contract or agreement, express or implied, whereby such employer ceases or refrains or agrees to cease or refrain from handling, using, selling, transporting or otherwise dealing in any of the products of any other employer, or to cease doing business with any other person, and any contract or agreement entered into heretofore or hereafter containing such an agreement shall be to such extent unenforcible and void[.] * * *"

Assn v. NLRB, 386 U.S. 612, 87 S.Ct. 1250, 18 L.Ed.2d 357 (1967). We therefore remanded the case to the Board for further consideration. Lewis v. NLRB, 122 U.S.App.D.C. 18, 350 F.2d 801 (1965). On remand the Board set the case for hearing before a trial examiner and, upon receipt of the trial examiner's report, dismissed the complaint. *See* W. A. Boyle, George J. Titler and John Owens, 179 NLRB 479 (1969). Petitioners now seek review of that dismissal.

█ In our view, this case is moot. On November 4, 1959, one week before the effective date of Section 8(e), the Joint Industry Contract Committee suspended operation of the PWC and the clause has not been enforced since. Moreover, shortly after the Board first declared the PWC illegal it was replaced in the National Bituminous Coal Wage Agreement by the so-called "80-cent clause." [3] Thus the PWC presently appears in no contract and has no effect on the primary conduct of any party. "When events during the pendency of the appeal have eliminated any possibility that the court's order may grant meaningful relief affecting the controversy that precipitated the litigation, applicable *doctrine permits, and judicial administration generally calls for, dismissal of the appeal.*" Alton & Southern Ry. Co. v. Int. Assn of Machinists & Aerospace Workers, 150 U.S.App.D.C. 36, 41, 463 F.2d 872, 877 (1972). We therefore think the issue of the PWC's validity lacks the immediacy of a live controversy calling for judicial resolution. *See, e. g.,* SEC v. Medical Committee for Human Rights, 404 U.S. 403, 92 S.Ct. 577, 30 L.Ed.2d 560 (1972). If the union subsequently attempts to insert the PWC in a later contract or if some party later attempts to assert rights derived from the PWC, there will be time enough then to consider the difficult issues which it poses. *Cf.* Golden v. Zwickler, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969).

## II. *Nos. 21,129 & 21,226*

As indicated above, when the PWC was first declared illegal the union and coal producers quickly moved to replace it with the so-called "80-cent clause" which provided, in effect, for an 80-cent royalty to the union welfare fund for each ton of coal purchased from a non-union coal producer.[4] Independent mine operators again challenged this clause as violative of Section 8(e), and the Board initially upheld their claim and issued a cease and desist order. *See* Int. Union, United Mine Workers, 165 NLRB 467 (1967). The union's petition for review (No. 21,129) and the Board's cross-petition for enforcement (No. 21,226) were then consolidated in this court, and in Int. Union, United Mine Workers v. NLRB, 130 U.S.App.D.C. 244, 399 F.2d 977 (1968), we denied enforcement and remanded the case so the Board could consider whether the 80-cent clause functioned as a lawful surrogate for the PWC.

Pursuant to this remand,[5] the trial examiner held additional hearings and filed proposed findings of fact and con-

---

3. *See* note 4 *infra.*

4. The 80-cent clause provides, in relevant part:
   "During the life of this agreement there shall be paid into [the union welfare fund] by each operator signatory hereto the sum of forty cents (40¢) per ton of two thousand (2,000) pounds on each ton of bituminous coal produced by such Operator for use or for sale. On all bituminous coal procured or acquired by any signatory Operator for use or for sale, (i. e., all bituminous coal other than that produced by such signatory Operator) there shall, during the life of this agreement, be paid into such Fund by each such Operator signatory hereto or by any subsidiary or affiliate of such Operator signatory hereto the sum of eighty cents (80¢) per ton of two thousand (2,000) pounds on each ton of such bituminous coal so procured or acquired on which the aforesaid sum of forty cents (40¢) per ton had not been paid into said Fund prior to such procurement or acquisition. * * *"

5. On July 21, 1970, acting pursuant to a petition by the union, we recalled our mandate solely for the purpose of directing the Board to complete its reconsideration by Dec. 1, 1970.

clusions of law holding once again that the 80-cent clause violated Section 8(e). Thereupon the Board reversed both the trial examiner and its previous decision and dismissed the complaint. *See* Int. Union, United Mine Workers, 188 NLRB No. 121 (1971). With the cases in this posture we ordered, *sua sponte*, that Nos. 21,129 and 21,226 be consolidated with No. 23,947 (the PWC case) for review.

Shortly after this court's consolidation order, Dixie Mining Company, one of the charging parties, moved to vacate the order and, when this motion was denied, suggested a rehearing *en banc*. Although *en banc* rehearing was also denied, the court noted that the jurisdictional issues raised by Dixie Mining Company "may be considered by the panel when the cases are heard on the merits * * *." We have now given careful consideration to these issues, and we conclude that we lack jurisdiction in Nos. 21,129 and 21,226.

The most salient fact about the 80-cent clause cases is that no party has yet appealed from the Board's second supplemental decision dismissing the Section 8(e) complaint. Accordingly, there is no party aggrieved properly before this court within the meaning of Section 10(f) of the Act which delineates our appellate jurisdiction over the Board.[6] Clearly the union is not aggrieved by the Board's order inasmuch as the Board's dismissal of the complaint was the action the union itself requested. The charging parties were aggrieved, but they have not as yet decided to file an appeal and obviously we cannot compel them to do so.

▮ To be sure, this court had jurisdiction over the 80-cent clause cases when the union appealed from the Board's initial unfair labor practice finding. But our unqualified remand in that case operated to divest us of jurisdiction. *See* NLRB v. Wilder Manufacturing Co., 147 U.S.App.D.C. 152, 454 F.2d 995 (1971); Greater Boston Television Corp. v. FCC, 149 U.S.App.D.C. 322, 463 F.2d 268 (1971). Having lost jurisdiction, absent extraordinary circumstances we cannot now regain it until a proper appeal has been perfected. Accordingly, Nos. 21,129 and 21,226, as well as No. 23,947, must be dismissed.

So ordered.

---

6. Section 10(f), 29 U.S.C. § 160(f) (1970), provides, in relevant part:

"Any person aggrieved by a final order of the Board granting or denying in whole or in part the relief sought may obtain a review of such order in any United States court of appeals in the circuit wherein the unfair labor practice in question was alleged to have been engaged in or wherein such person resides or transacts business, or in the United States Court of Appeals for the District of Columbia, by filing in such a court a written petition praying that the order of the Board be modified or set aside. * * *"