**NORTHWEST AIRLINES, INC.,**
**Petitioner,**

v.

**FEDERAL AVIATION ADMINISTRA-**
**TION, Respondent, Robert T.**
**McClellan, Intervenor.**

**No. 79–2538.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 18, 1982.

Decided April 23, 1982.

---

William R. Stein, Washington, D. C., with whom Philip A. Lacovara, Washington, D. C., was on the brief, for petitioner.

Wendy Miller Keats, Atty., Dept. of Justice, Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., Washington, D. C., at the time the brief was filed, and Anthony J. Steinmeyer, Atty., Dept. of Justice, Washington, D. C., were on the brief, for respondent.

Thomas B. Carr, Washington, D. C., was on the statement, in lieu of brief, for intervenor.

Before ROBB and WALD, Circuit Judges, and GERHARD A. GESELL,* District Judge, for the District of Columbia.

Opinion for the Court filed by Circuit Judge ROBB.

ROBB, Circuit Judge:

Petitioner Northwest Airlines, Inc., challenges the refusal of the Federal Aviation Administration to· revoke an exemption from disqualification for a pilot's certificate by reason of alcoholism. The exemption was issued to a commercial airline pilot, Robert T. McClellan, employed by Northwest. The FAA ruled that the pilot's voluntary surrender of his exemption mooted the case and eliminated the need for further action by the Agency. Although Northwest raises serious questions as to the legality of the FAA's alcoholism exemption policy, we hold that the case is moot, and dismiss the petition.

I.

In order to fly a commercial aircraft in the United States a pilot must have a valid airman's certificate issued by the FAA. 49 U.S.C. § 1422(b) (1976). A prerequisite to obtaining an airman's certificate is a medical certificate issued by the Federal Air Surgeon. Generally, pilots are unable to obtain a medical certificate if they suffer from certain medical conditions listed in FAA regulations, including alcoholism. See, e.g., 14 C.F.R. § 67.13(d)(1)(i)(c). Un-

der 49 U.S.C. § 1421(c), however, the Administrator of the FAA is authorized to grant exemptions "from the requirements of any rule or regulation prescribed under this subchapter if he finds that such action would be in the public interest." The Administrator has delegated to the Federal Air Surgeon the authority to grant exemptions from the medical requirements. 14 C.F.R. § 11.53. (FAA Br. at 5 n.5)

Until his recent retirement, intervenor Robert T. McClellan was a commercial passenger jet pilot for Northwest Airlines. In March of 1977 he was suspended by Northwest for drinking alcoholic beverages aboard an aircraft while "deadheading" from Japan back to Minneapolis/St. Paul. Northwest offered to reduce the length of suspension if McClellan would seek treatment for alcoholism, which he promptly did. On October 21, 1977 the Federal Air Surgeon granted McClellan an exemption allowing him to maintain a medical certificate despite a diagnosis of alcoholism. The exemption permitted McClellan to resume flying, subject to periodic reports attesting to his total abstinence from alcohol and the requirement that he "promptly report any adverse change in his medical condition." The exemption further provided that it "shall terminate if the Federal Air Surgeon finds there has been a substantial adverse change in any aspect of petitioner's medical condition." Northwest protested this grant of an exemption, but its administrative challenge was denied on May 14, 1979. Northwest did not seek judicial review of that denial.

In July of 1979 a Northwest employee gave the company an affidavit stating he had seen McClellan drink two cans of "Miller Lite" beer at his country club. Northwest immediately undertook an internal investigation, obtaining stenographically reported statements from people present at the country club on the relevant date, including McClellan. McClellan admitted he had often drunk "near-beer" containing not more than one-half of one percent alcohol but he denied that he had consumed "Miller Lite" or any other "strong beer".

---

* Sitting by designation pursuant to 28 U.S.C. § 292(a).

On July 18, 1979 Northwest notified the Federal Air Surgeon that the airline had grounded McClellan and requested that McClellan's medical certificate be revoked for noncompliance with the abstinence provisions of his alcoholism exemption. After reviewing the statements of the witnesses, other submissions from the parties, and reports from the medical personnel responsible for monitoring McClellan the Federal Air Surgeon decided on October 23, 1979 that there was "insufficient evidence" to show that McClellan consumed alcohol-containing beverages other than "near-beer". The Air Surgeon ruled:

Although we consider the recreational use of any alcohol containing beverage (including near beer) as a breach of the total abstinence provisions of his Grant of Exemption, we have concluded that Mr. McClellan's exemption should not be terminated. This decision is based upon a recognition that Mr. McClellan apparently did not knowingly violate the terms of his exemption and therefore his past consumption of "near beer" does not represent a substantial adverse change in his medical condition.

\* \* \* \* \* \*

He has been informed that his exemption may be terminated if he resumes consumption, for recreational purposes, of any beverage containing alcohol, including "near beer".

On December 6, 1979 Northwest filed with the FAA an administrative petition for reconsideration of the Air Surgeon's decision. In support of this petition Northwest submitted new information concerning McClellan's alleged violations. Also, Northwest on December 21, 1979 filed its petition for judicial review of the FAA order of October 23, 1979, which denied Northwest's application for revocation of McClellan's exemption. On January 30, 1980 the FAA Administrator reopened the record, and at the request of Northwest we remanded the record to the FAA. The Federal Air Surgeon thereafter received additional evidence from the parties. On November 24, 1980 the Air Surgeon closed the evidentiary record, and announced that he expected to decide the matter by December 5, 1980.

Before the Air Surgeon rendered a decision, McClellan by letter to the FAA dated December 2, 1980, voluntarily surrendered his exemption. McClellan's letter noted that Northwest had terminated him as an employee almost a year before, and that it was unlikely any other airlines would rehire him because of his age. McClellan stated he would therefore "cease the expenditure of time, effort, and money involved in defending an exemption I am not using." The letter also referred to assurances from the FAA that McClellan's surrender of his exemption would not prejudice any future efforts to obtain reinstatement. In conclusion he wrote—referring to arbitration proceedings:

I will continue to fight against Northwest's arbitrary action in suspending me from flight status and terminating my employment for such alleged infractions, but I will do so in appropriate proceedings in Minneapolis . . . .

(J.A. 193) Pursuant to McClellan's letter the FAA terminated his exemption and closed the case.

Northwest protested the failure of the FAA to act on the airline's petition for termination of McClellan's exemption. According to Northwest it was entitled to a formal declaration that the exemption had been revoked. On December 5, 1980 the Federal Air Surgeon rejected Northwest's argument. The Air Surgeon stated:

While the precise date of any alleged deviation from the exemption terms may be of interest to Northwest and Mr. McClellan in arbitration proceedings, it has no relevance to this agency's decision of whether to terminate the exemption. . . .

(J.A. 195) On January 19, 1981 the FAA Administrator upheld the Air Surgeon's decision to close the case. The Administrator held that "the issue placed before the Federal Air Surgeon by Northwest's petition was whether Mr. McClellan's exemption should, in accordance with its terms, be terminated. Once it was surrendered for

termination, that issue became moot." (J.A. 198) The Administrator was unmoved by Northwest's contention that the date of any failure to abstain on McClellan's part was important to the airline in pending arbitration proceedings concerning his grounding.

On February 6, 1981 the FAA filed in this court a supplemental record containing the additional materials submitted for consideration on the remand. On February 25, 1981 the FAA moved to dismiss as moot the Northwest petition of December 21, 1979 which challenged the FAA's refusal to revoke McClellan's exemption. On June 4, 1981 the FAA motion was denied by a motions panel of this court in an order stating that "Northwest Airline's petition presents a live controversy as to the authority of the FAA to revoke an exemption retroactively."

## II.

Northwest's fundamental attack on the FAA's action is that McClellan's exemption is "voidable *ab inito*" because it was issued pursuant to an illegal policy. Northwest argues that the FAA's alcoholism exemption program is illegal because (1) it is inconsistent with sections 601(a) and (b) of the Federal Aviation Act, 49 U.S.C. § 1421(a), (b) (1976), which require the FAA to make public safety a primary concern in implementing regulations; (2) it improperly delegates to representatives of the pilots' union and to airline employees responsibility for monitoring a pilot's abstinence; and (3) the policy was established in violation of the Administrative Procedure Act. Petitioner relies heavily on *Delta Airlines, Inc. v. United States*, 490 F.Supp. 907 (N.D.Ga.1980), which held that the FAA's exemption policy was being administered in a manner violating the public safety requirements of the Federal Aviation Act.

The legality of the FAA's alcoholism exemption policy may not be free from doubt,[1] but that matter is not a part of this case. The present petition for review concerns only two letter rulings by the FAA refusing to revoke McClellan's exemption. Northwest's challenge to the entire regulatory scheme, however, is essentially an attack on the initial *grant* of McClellan's exemption, a matter we cannot consider here because Northwest's challenge on this point is not timely. The FAA upheld McClellan's exemption in an order dated May 14, 1979. Northwest could have sought judicial review then, but chose not to do so. Since judicial review of FAA orders may be had only "upon petition, filed within sixty days after the entry of such order," 49 U.S.C. § 1486(a) (1976), the time for reviewing the grant of McClellan's exemption had long expired when Northwest filed this petition on December 21, 1979.

## III.

Northwest further maintains that the FAA erred in accepting the surrender of McClellan's exemption, and in failing to act more promptly in the case. The airline seeks a declaration that McClellan's exemption was invalid as of July 1979 when the FAA received information that the pilot had consumed alcoholic beverages. In light of McClellan's surrender of his exemption we must conclude that this issue is moot.

As the Supreme Court and this court have often held, federal courts are "not empowered to decide ... abstract propositions, or to declare, for the government of future cases, principles or rules of law which cannot affect the result as to the thing in issue in the case before it." *Cali-*

1. *See Delta Airlines, Inc. v. United States*, 490 F.Supp. 907 (N.D.Ga.1980). The record before us discloses that prior to 1976 the FAA required alcoholic pilots to demonstrate recovery by, among other things, a two to five year period of abstinence. In the seven years prior to 1976 the FAA granted only fourteen alcoholism exemptions. Beginning in January 1976 the agency granted exemptions three to six months after a pilot's discharge from a rehabili-tation facility and a psychiatric evaluation. Since January 1976 some 274 exemptions have been granted, some for the second time. The relapse rate for those exempted the first time has ranged between 10% and 25%, the relapse rate of those with second exemptions has been about 50%. Northwest contends that the FAA exemption policy unlawfully jeopardizes air safety in violation of the Aviation Act, 49 U.S.C. § 1421(a).

fornia v. San Pablo & Tulare R.R. Co., 149 U.S. 308, 314, 13 S.Ct. 876, 878, 37 L.Ed. 747 (1893); Brownlow v. Schwartz, 261 U.S. 216, 217, 43 S.Ct. 263, 264, 67 L.Ed. 620 (1923); North Carolina v. Rice, 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971); United States v. Ford Motor Co., 187 U.S.App.D.C. 323, 328, 574 F.2d 534, 539 (1978). A declaration as to whether the FAA should have formally revoked McClellan's exemption cannot affect "the thing in issue" in this case—the particular exemption of one pilot. Voluntary surrender of the exemption has precisely the same effect as formal revocation by the FAA. In either situation the pilot is unable to obtain a medical certificate or fly a commercial aircraft unless and until he reapplies and obtains a new exemption. Formal revocation imposes no barrier to reapplication, and the FAA has stated that it "would treat any reapplication by Mr. McClellan in the same manner that it would have ... had his exemption been involuntarily terminated." Under these circumstances, Northwest is asking this court to render a decision that would have no effect on the specific rights involved in this case, a classic example of mootness.

A declaration by this court might have effects outside the scope of this petition for review, but this does not alter our finding of mootness. As Northwest says, one of its primary concerns is the effect of the FAA's failure to revoke McClellan's exemption on an existing arbitration dispute between Northwest and the pilot over back-pay liability. See Opposition to Motion to Dismiss the Petition as Moot at 16–18. The arbitration dispute, however, is an entirely separate controversy hinging on McClellan's contractual relationship with the airline. That a ruling from this court might influence the arbitrator or be helpful in resolving the back-pay controversy is irrelevant to the mootness of the petition for review.

A party, of course, may not deprive the court of jurisdiction by voluntarily ceasing his allegedly illegal action. United States v. Trans-Missouri Freight Ass'n, 166 U.S. 290, 307–08, 17 S.Ct. 540, 546, 41 L.Ed. 1007 (1897). Nonetheless, cessation of the challenged activity, even if voluntary, may moot a case if "there is no reasonable expectation that the wrong will be repeated." United States v. W. T. Grant Co., 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953). Under the circumstances presented here, it is unlikely that McClellan will be able to resume his flying career. Northwest Airlines has terminated his employment as a pilot. McClellan stated in his letter to the FAA, "I do not presently anticipate that, due to my age, any other airline will employ me in a flight position between now and the date that I reach my mandatory retirement age." Even if McClellan sought a new exemption the FAA has stated that "the allegations in Northwest's petition, as well as all of the facts investigated incident to that petition, would be considered in such event." Unlike the situation in the Trans-Missouri case, supra, and other cases involving the voluntary cessation of allegedly illegal conduct, McClellan is hardly "free to return to his old ways" following his voluntary surrender of his certificate. United States v. W. T. Grant Co., 345 U.S. 629, 632, 73 S.Ct. 894 (1953).

Nor is this case "capable of repetition, yet evading review." This doctrine of nonmootness may have greatly expanded since it was first discussed in Southern Pacific Terminal Co. v. ICC, 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911); as this court has observed, "the exception may have swallowed up the rule." Alton & Southern Ry. Co. v. Int'l Ass'n of Machinists & Aerospace Workers, 150 U.S.App.D.C. 36, 43, 463 F.2d 872, 879 (1972). Nonetheless, we decline to hold that this case "evades review." It is reasonable to believe that the legality of the FAA exemption policy will be challenged in other cases; and because a pilot cannot fly a commercial aircraft without a medical certificate, it is unlikely that pilots in such cases will voluntarily surrender their certificates. Nor are alcoholism exemptions so short-lived as to preclude review in the usual circumstances. Compare Golden Holiday Tours v. CAB, 174 U.S.App. D.C. 292, 294, 531 F.2d 624, 626 (1976). Moreover this is not a situation in which a

**1308**

litigant would have to seek emergency relief if the challenged event reoccurred. *See British Caledonian Airways, Ltd. v. Bond*, U.S.App.D.C., 665 F.2d 1153 (1981). In short, there is little chance that Northwest in particular will be unable to obtain judicial review of its attack on the FAA program. *See, e.g., Delta Airlines, Inc. v. United States*, 490 F.Supp. 907 (N.D.Ga. 1980); *cf. Nader v. Volpe*, 154 U.S.App.D.C. 332, 333, 475 F.2d 916, 917 (1973). As the Supreme Court stated in *DeFunis v. Odegaard*, 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974), the "capable of repetition, yet evading review" doctrine permits departure from settled rules of mootness only in an "exceptional situation." *Id.* at 319, 94 S.Ct. at 1707. We do not find such exceptional circumstances here.

Our motions panel rejected the FAA's motion to dismiss for mootness on the ground that "Northwest Airline's petition presents a live controversy as to the authority of the FAA to revoke an exemption retroactively". We have concluded however that a discussion of the FAA's authority to revoke an exemption retroactively cannot affect the specific controversy presented by the petition for review—the refusal of the Agency to revoke the exemption; for when McClellan surrendered his certificate there was nothing left to revoke, retroactively or otherwise. A discussion of the FAA's authority would be only an advisory opinion relating to (1) how the FAA should handle future cases of this type, or (2) how the arbitrator should resolve the back-pay dispute between Northwest and McClellan. For the reasons already given we cannot take such action. We hold that the case is moot.

*Dismissed.*